UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


IN RE:
TERRI L. STEFFEN,

            Debtor.
_____/


TERRI L. STEFFEN,

            Appellant,              Case No. 8:08-cv-1186-T-33
                                    Bankr. No. 8:01-bk-9988-ALP
v.

UNITED STATES OF AMERICA,

            Appellee.
_____/


## <u>**ORDER**</u>

This cause comes before the Court on consideration of
Terri L. Steffen's Motion for Rehearing and Renewed Request
for Oral Argument (Doc. # 31), filed on March 30, 2009, and
the Government's response thereto (Doc. # 32), filed on April
3, 2009. Upon due consideration of the parties' submissions
on this issue, the Court finds it appropriate to grant
Steffen's motion for rehearing as to this Court's March 20,
2009, Opinion (Doc. # 30). However, for the reasons
previously stated in its March 20, 2009, Order, the Court
finds that the facts and legal issues are adequately presented
such that oral argument is unnecessary. (<u>See</u> Doc. # 30 at 8

n. 2).

The present action concerns Steffen's appeal from the United States Bankruptcy Court's Order on Amended Motion by United States for Summary Judgment on Objection to Homestead Exemption and Debtor's Cross-Motion for Summary Judgment (Doc. # 1-3), entered on April 25, 2008. On March 20, 2009, this Court issued its Opinion affirming the Bankruptcy Court's decision granting summary judgment in favor of the Government on its objection to Steffen's claim of homestead exemption. Steffen has filed a motion for rehearing under Bankruptcy Rule 8015, arguing that the Court applied the wrong standard of review in reaching its decision on appeal.

The District Court for the Middle District of Florida has previously applied the same standard to motions for rehearing under Bankruptcy Rule 8015 as is applied to motions for reconsideration under Federal Rule of Civil Procedure 59(e) or 60(b). In re Envirocon Int'l Corp., 218 B.R. 978, 979 (M.D. Fla. 1998) (citing Cover v. Wal-mart Stores, Inc. 148 F.R.D. 294, 295 (M.D. Fla. 1993)). Thus, the Court requires the movant to "set forth facts or law of a strongly convincing nature to induce the Court to reverse its prior decision." Id.

In reviewing the Bankruptcy Court's decision on homestead

exemption, the Court applied the standard of review as set forth in Rule 8013, Federal Rules of Bankruptcy Procedure, which provides that "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous . . . ." Fed.R.Bankr.P. 8013. Steffen asserts, and the Court agrees, that the Court was mistaken in applying a clearly erroneous standard to the factual findings of the Bankruptcy Court. As the Eleventh Circuit clarified in In re Optical Technologies, Inc., 246 F.3d 1332 (11th Cir. 2001), the standard for review of a summary judgment ruling must be de novo because by definition a court is precluded from making factual findings on summary judgment. Id. at 1335 (reasoning that because summary judgment may only be granted in the absence of a genuine issue of material fact, the bankruptcy court's "factual findings" are actually "conclusions as a matter of law that no genuine issue" exists).

For this reason only, the Court finds that rehearing of the appeal is warranted. Accordingly, the Court finds it appropriate to conduct a de novo review of the Bankruptcy Court's order on summary judgment based on the record in this case as it existed at the time of the Court's March 20, 2009, Order. Any renewal of arguments on the issue of homestead exemption that have already been considered in the Court's

previous Order will not be addressed.

## I. __Background__

In 1987, the SEC began a criminal investigation of Steffen's husband, Paul A. Bilzerian. (Doc. # 16 at 19.) Bilzerian was indicted in 1988 and was convicted on nine counts of the indictment for securities fraud and conspiracy in the United States District Court for the Southern District of New York on June 9, 1989. (Doc. # 1-25); United States v. Bilzerian, Case No. 88 CR. 962 (RJW), 1992 WL 301390, at *1 (Sept. 2, 1992).[1] Three weeks after the criminal conviction, the SEC initiated a civil suit against Bilzerian in the District Court for the District of Columbia, seeking a permanent injunction to prevent further violations of securities laws and a judgment of disgorgement to return the unlawful profits to injured shareholders. S.E.C. v. Bilzerian, 814 F. Supp. 116, 117 (D.D.C. 1993). The injunction was granted and Bilzerian was ordered to disgorge profits in the amount of $33,140,787.07 on January 28, 1993, and he was ordered to disgorge an additional $29,196,812.46 in prejudgment interest on June 25, 1993. Id. at 124; S.E.C. v.

---

[1] The Second Circuit affirmed Bilzerian's criminal conviction on January 3, 1991. United States v. Bilzerian, 926 F.2d 1285 (2d Cir. 1991), cert. denied, 502 U.S. 813 (1991).

Bilzerian, CIV. A. No. 89-1854 (SSH), 1993 WL 542584, at *1 (D.D.C. June 25, 1993).

On August 15, 1991, before the disgorgement judgments were entered, Bilzerian filed for bankruptcy in the Middle District of Florida. In re Bilzerian, 146 B.R. 871, 872 (M.D. Fla. 1992). Shortly thereafter, Bilzerian filed a Complaint for Injunctive Relief in the District Court, seeking to prevent the SEC from further pursuing monetary damages due to the automatic stay provisions of 11 U.S.C. § 362(a). Id. After protracted litigation on this issue, the Eleventh Circuit ultimately held that the disgorgement judgments were not dischargeable in bankruptcy. In re Bilzerian, 153 F.3d 1278 (11th Cir. 1998). The SEC did not attempt to enforce the disgorgement judgments against Bilzerian until after the Eleventh Circuit's decision in 1998. SEC v. Bilzerian, 131 F. Supp. 2d 10, 12 (D.D.C. 2001). On August 21, 2000, the Bankruptcy Court found Bilzerian in contempt for failure to make any payments on the roughly $62 million in disgorgement judgments. Id.

On January 27, 1992, Bilzerian's bankruptcy trustee filed an adversary proceeding against Appellant Terri L. Steffen to prevent pre-bankruptcy transfer of certain real property located at 16229 Villarreal de Avila, Tampa, Florida to

Steffen individually. (Id.) The Bankruptcy Court subsequently approved a settlement agreement between Steffen and the bankruptcy trustee on February 23, 1994, permitting Steffen to purchase Bilzerian's interest in the Villarreal Property. (Id.; Doc. # 16 at 19 n. 7.) Steffen asserts that in June 1994 she transferred the Property back to herself and Bilzerian as tenants-by-the-entireties, without consideration and subject to an agreement whereby Bilzerian was obligated to transfer the Property back to Steffen on demand. (Doc. # 1-7 at 3 n.1; # 16 at 8.) According to Steffen, this transfer was executed so that she and Bilzerian could contest the property taxes on the Property. (Doc. # 1-16 at 55; # 16 at 8.)

In March 1997, Steffen and Bilzerian conveyed the Villareal Property to the Overseas Holding Limited Partnership ("OHLP"), an entity that was created in 1995 to hold certain assets of the couple. (Doc. # 1-7 at 3 n. 1; # 1-13; # 1-16 at 56-57; # 2-10 at 8.) OHLP was formed in conjunction with the Paul A. Bilzerian and Terri L. Steffen Revocable Trust of 1995 (the "1995 Trust"). (Doc. # 2-10 at 8.) The 1995 Trust is the limited partner of OHLP and owns 99% of OHLP. (Id.; Doc. # 16 at 2 n. 2, 3.) Overseas Holding Company ("OHC"), a corporation formed in 1996, is the 1% general partner of OHLP. (Id.) The 1995 Trust owns 100% of the stock of OHC, and

Steffen claims that she was the sole beneficiary of the 1995 Trust at the time that she filed for bankruptcy on May 29, 2001. (Doc. # 1-7 at 3 n. 1; # 16 at 8 n. 2, 9 n. 4.)

According to Steffen, she continually resided at the Villarreal Property from 1992 through and including her bankruptcy filing date of May 29, 2001. (Doc. 16 at 6, 9.) In addition, Steffen asserts that she claimed the Villarreal Property as her homestead for property tax exemption purposes prior to and through the year 2001. (Doc. # 3-8 at 3, 5.)

After Steffen's petition for bankruptcy was filed, on January 16, 2002, the District Court for the District of Columbia entered a final judgment by consent holding that Steffen or OHLP had a 50% interest in the Villarreal Property and that the remaining 50% interest belonged to Bilzerian's bankruptcy receivership estate. (Doc. # 1-14 at 2.) The court ordered that the Property be sold and that 50% of the net proceeds be delivered to Steffen or OHLP and the other 50% be delivered to the receiver. (Id. at 2-3.) Steffen attests that the Property was sold to the Guerrini Trust in 2004 for $2,550,000, that she received $800,000 in proceeds from the sale, and that she deposited those proceeds in a "homestead account" in OHLP's name. (Doc. # 3-11 at 23-25.)

## II. **Procedural History**

On May 29, 2001, Appellant Terri L. Steffen filed in the United States Bankruptcy Court for the Middle District of Florida a voluntary petition for protection under Chapter 11 of the Bankruptcy Code (the "Bankruptcy Case"). (Bankr. Doc. # 1.) On September 19, 2001, Steffen filed her Schedule C in which she claimed as exempt the real property located at 16229 Villarreal de Avila. (Doc. # 1-7 at 13; # 16 at 6.) Schedule C listed the current market value of the Property as $3,500,000. (Bankr. Doc. # 1-7 at 13.)

The bankruptcy proceedings were suspended by order of the Bankruptcy Court on July 10, 2001, and became active again on January 25, 2002. (Bankr. Doc. ## 14, 22, 34, 35.) Thereafter, on March 20, 2002, a meeting of creditors pursuant to 11 U.S.C. § 341 of the Bankruptcy Code was conducted. (Doc. # 1-16 at 85; Bankr. Doc. # 46.) The Section 341 meeting was not formally concluded on that date, but the parties did not set a particular date to reconvene the meeting. (Doc. # 1-16 at 85.) On June 13, 2002, the Government filed an objection to Steffen's claim of homestead exemption as to the Property. (Doc. # 1-9.)

On August 19, 2002, the Government filed a motion for summary judgment on their objection to the homestead exemption

in the Bankruptcy Court. (Doc. # 1-15.) Steffen filed a cross-motion for summary judgment on September 17, 2002. (Bankr. Doc. # 97.) On October 8, 2002, the Bankruptcy Court deferred ruling on the homestead matter pending further proceedings on Steffen's proposed plan of reorganization. (Doc. # 1-23.) On December 19, 2007, Steffen's Chapter 11 case was converted to a case under Chapter 7 of the Bankruptcy Code. (Doc. # 18 at 8; Bankr. Doc. # 470.) A Section 341 meeting of creditors in the Chapter 7 case was then held on January 23, 2008. (Doc. ## 3-10, 3-11.)

Upon order of the Bankruptcy Court, the parties filed renewed cross-motions for summary judgment on March 28, 2008. (Doc. ## 3-6, 3-9.) On April 25, 2008, the Bankruptcy Court issued an order granting the Government's summary judgment motion and ruling that the Property was not subject to homestead exemption. (Doc. # 1-3.) The Bankruptcy Court held that (1) the Government's objection to Steffen's homestead exemption claim was timely; (2) the Property was not entitled to homestead exemption because the Property was not owned by a "natural person" at the time that Steffen filed for bankruptcy; (3) the evidence did not show that Steffen had an equitable interest in the Property sufficient to claim it as exempt; and (4) because the Property itself was non-exempt,

the proceeds from the sale of the Property were also not exempt from claims of Creditors. (<u>Id.</u> at 9-16.) The Bankruptcy Court denied Steffen's subsequent motion for reconsideration on May 8, 2008. (Doc. # 3-24.)

Steffen filed her notice of appeal from the Bankruptcy Court's Order denying her claim of homestead exemption on May 19, 2008. (Doc. # 1-2.) On appeal, Steffen argues that: (1) the Government's objection to Steffen's homestead claim was untimely because it did not comply with the thirty-day deadline imposed by Federal Rule of Bankruptcy Procedure 4003(b); (2) the Bankruptcy Court failed to apply the appropriate summary judgment standard under Rule 56; (3) the Bankruptcy Court erred when it determined that Steffen did not have sufficient ownership in the Property to claim it as exempt; (4) it was error for the Bankruptcy Court to determine on summary judgment that Steffen had transferred the Property to OHLP before filing for bankruptcy for the sole purpose of shielding it from the reach of creditors; and (5) it was error for the Bankruptcy Court to determine on summary judgment that the transfer of the Property to OHLP was tantamount to abandonment. (Doc. # 16 at 10.)

The Government filed a responsive brief, arguing that the Bankruptcy Court correctly ruled that the Government's

objection to Steffen's homestead claim was timely and that Steffen had no legal or equitable interest in the Villarreal Property as of the petition date. (Doc. # 18 at 10-15.) In addition, the Government asserts that any factual errors recited by the Bankruptcy Court were immaterial to the Bankruptcy Court's holding and were therefore harmless. (<u>Id.</u> at 15.) In her reply, Steffen presents further argument on the timeliness of the Government's objection and on Steffen's asserted beneficial ownership of the Property. (Doc. # 28 at 5-15.) She also disputes the Government's claim that the Bankruptcy Court's factual errors were immaterial. (<u>Id.</u> at 15-17.)

## III. **Legal Standard**

An individual is permitted to exempt property from the bankruptcy estate by claiming exemptions authorized by 11 U.S.C. § 522. Section 522 permits states to opt out of the federal exemptions provided for in subsection 522(d) and limit its residents to those exemptions provided for under state law. 11 U.S.C. § 522(b). The state of Florida has exercised this option. Fla. Stat. § 222.20 (2006). Article X, Section 4(a)(1) of the Florida Constitution provides, in pertinent part:

There shall be exempt from forced sale under

> process of any court, and no judgment, decree or
> execution shall be a lien thereon, . . . the
> following property owned by a natural person:
>
> (1) a homestead, . . . upon which the exemption
> shall be limited to the residence of the owner or
> the owner's family . . . .

The party objecting to the homestead exemption has the burden of proving, by a preponderance of the evidence, that the debtor is not entitled to the exemptions claimed. <u>In re Wilbur</u>, 206 B.R. 1002, 1006 (Bankr. M.D. Fla. 1997). If the objector succeeds in making a prima facie showing, the burden then shifts to the debtor to prove that the exemptions are legally valid. <u>Id.</u>

As previously stated, the Court reviews the Bankruptcy Court's summary judgment decision de novo. <u>In re Optical Technologies, Inc.</u>, 246 F.3d at 1335.

## IV. <u>Analysis</u>

### A. **Was the Government's Objection Timely?**

Steffen contends that the Bankruptcy Court erred when it found that the Government's objection to Steffen's claim of homestead exemption was timely made under Federal Rule of Bankruptcy Procedure 4003(b). Rule 4003 (b) provides in part:

> [A] party in interest may file an objection to the
> list of property claimed as exempt within 30 days
> after the meeting of creditors held under § 341(a)
> is concluded or within 30 days after any amendment
> to the list or supplemental schedules is filed,

whichever is later.

In this case, the Section 341 meeting of creditors for Steffen's Chapter 11 case was held on March 20, 2002. At the conclusion of that meeting, the United States Trustee continued the meeting indefinitely and did not schedule a date for the meeting to be reconvened. On June 16, 2002, the Government filed its objection to Steffen's homestead claim. Steffen asserts that, because a date to reconvene the Section 341 meeting was not announced within a reasonable time, the initial meeting was deemed concluded and the thirty-day deadline began on March 20, 2002. Thus, Steffen contends that the Government's objection, filed sixty days after the thirty-day period ended, was untimely.

Courts are not in agreement as to when a Section 341 meeting is deemed concluded in the absence of a specified date and time for continuation of the meeting. Some courts "apply a 'bright-line' approach, holding that if a trustee does not announce a specific date to which the meeting is being continued within 30 days of the last meeting held, the meeting will be deemed to have been concluded on the last date it was convened." See In re Peres, 530 F.3d 375, 377 (5th Cir. 2008) (discussing the various approaches to this issue and collecting cases that apply this bright-line approach). As

the Fifth Circuit recently noted in <u>In re Peres</u>, a majority of courts reject this bright-line approach, choosing instead to adopt a case-by-case approach or require the trustee or the court to declare that the Section 341 meeting is concluded. <u>Id.</u>; <u>see e.g.</u> <u>In re Cherry</u>, 341 B.R. 581, 587 (Bankr. S.D. Tex. 2006) (finding a case-by-case approach most appropriate because it allows a trustee discretion in complicated cases); <u>In re Brown</u>, 221 B.R. 902, 906-07 (Bankr. M.D. Fla. 1998) (approving the case-by case approach which analyzes the facts of the case to determine whether the trustee acted reasonably); <u>Petit v. Fessenden</u>, 182 B.R. 59, 63 (D. Me. 1995) (applying a case-by-case approach).

One of the rationales for rejection of a bright-line rule is that such a rule could impede justice where a trustee requires "further time and information to fully understand a debtor's financial affairs." <u>In re Peres</u>, 530 F.3d at 378. Under a case-by-case approach, the court must determine whether any delay in reconvening the Section 341 meeting was reasonable under the circumstances. <u>Id.</u>

The Court agrees with the Bankruptcy Court that application of the more flexible case-by-case approach to determining whether the continued meeting of creditors should be deemed concluded as of March 20, 2002, is appropriate in

14

this case.  The complex nature of this case and the need for further information from Steffen rendered the Trustee's delay in continuing the Section 341 meeting reasonable.

Steffen included a "Preliminary Statement" with her Schedules of Assets and Statement of Financial Affairs stating that, because Steffen had not been granted access to certain seized documents, "it [was] impossible to ensure the accuracy of those Schedules and Statements."  (Doc. # 1-7 at 2.) Steffen further indicated that those Schedules and Statement of Financial Affairs were "subject to amendment, modification, restatement and revision."  (<u>Id.</u>)

The transcript of the Section 341 meeting reflects that the reason for the indefinite continuation was the fact that Steffen could not commit to the reliability of her Statement of Financial Affairs.  (Doc. # 1-16 at 77-78.)  According to the Trustee, this made the Statement "unusable as a document against which someone could say that there was perjury in that document."  (<u>Id.</u>)

The complexity of this case is exemplified by its duration of nearly eight years and its conversion from a Chapter 11 case to a Chapter 7 case nearly six years after it was filed.  (Bankr. Doc. # 470.)  Complications regarding the homestead issue resulted in a decision by the Bankruptcy Court

on October 8, 2002, to defer ruling on the homestead matter pending further proceedings on Steffen's proposed plan of reorganization. (Doc. # 1-23.) The summary judgment motions regarding homestead exemption were not re-filed until March 2008, after the case had been converted to Chapter 7. (Doc. # 3-6.)

The Bankruptcy Court also found that the Government's objection to the homestead exemption was timely because the transcript of the March 20, 2002, meeting of creditors clearly showed that Steffen's counsel, Harley Riedel, did not insist on a decision regarding the conclusion of that meeting. (Doc. # 1-3 at 9.) Steffen asserts that the Bankruptcy Court "misread the transcript" and that it is clear from Riedel's statements that he "objected to the meeting not being concluded." (Doc. # 16 at 16-17.) The Court disagrees. The transcript of the Section 341 meeting establishes that Riedel did not clearly object to the continuation of the Section 341 meeting.

As the Section 341 meeting was coming to a close, the hearing officer stated that he was going to continue the meeting indefinitely because Steffen's preliminary statement to her financial schedules was essentially a blanket disclaimer to the effect that it was impossible at that time

for Steffen to ensure the accuracy of those schedules and that they were subject to modification or revision at any time. (Doc. # 1-7 at 2; # 1-16 at 77.)  The hearing officer suggested that Steffen submit amended schedules without the blanket disclaimer and with footnotes to those specific entries that Steffen believed to be compromised due to her lack of access to certain records.  (Doc. # 1-16 at 79.) Riedel disagreed with that suggestion and proposed instead that, subject to the approval of counsel for the United States Trustee, the Section 341 meeting be concluded as of March 20, 2002, and then be reconvened at a later date if necessary. (<u>Id.</u> at 79-81.)

Further discussions ensued and then the hearing officer said, "Well, why don't we do this, we're going to hold open the issue of whether this meeting is continued," to which Riedel replied, "Okay."  (<u>Id.</u> at 85.)  The hearing officer indicated that he would discuss the issue with the Trustee and then decide whether to formally conclude the Section 341 meeting.  (<u>Id.</u>)  Riedel asked if they would be notified if it was decided that the meeting was going to be closed, and the hearing officer stated that a proceeding memo would be filed indicating whether the meeting was closed, continued indefinitely, or set for a specific date to reconvene.  (<u>Id.</u>)

As the meeting concluded, Riedel and counsel for the Government were discussing logistics for attendance at a second Section 341 meeting and when it might be scheduled. (<u>Id.</u> at 86.)

It is clear from the transcript of the March 20, 2002, meeting of creditors that the parties expressed their understanding that the meeting was not concluded as of that date. Although Riedel stated his preference to conclude, he expressed agreement to leaving the issue unresolved. Based on the transcribed statements made at the Section 341 meeting, the Court finds as a matter of law that Steffen's counsel did not demand conclusion of the meeting. Importantly, Steffen also did not exercise her right to file a motion to compel conclusion of the Section 341 meeting of creditors. <u>See</u> <u>In re Brown</u>, 221 B.R. 902, 906 (Bankr. M.D. Fla. 1998) ("If a trustee is not acting reasonably . . . the debtor is encouraged to bring an appropriate motion to seek a judicial determination that the meeting of creditors is concluded").

The Court concludes that, on the record before this Court, there are no genuine issues of material fact as to the reasonableness of the Government's delay in reconvening the Section 341 meeting. The record further establishes that the Government had ample reason to believe that the Section 341

meeting was not concluded as of that date.  The Court finds as a matter of law that the Government's June 16, 2002, objection was timely filed under Bankruptcy Rule 4003(b).  Therefore, the Bankruptcy Court's decision on this issue is affirmed.

## B.    Is Steffen Entitled to the Homestead Exemption?

Steffen next asserts that the Bankruptcy Court erred when it found that Steffen did not have sufficient ownership interest in the Villarreal Property to claim it as exempt.  In reaching this conclusion, the Bankruptcy Court found that (1) Steffen's status as 100% stockholder of OHC, which is the general partner of OHLP, did not support her claim for homestead exemption of property owned by OHLP; (2) Steffen's claimed status as sole beneficiary of the 1995 Trust, which is the 99% limited partner of OHLP, did not give her a right to claim homestead exemption; and (3) under the circumstances of this case, Steffen's possession of the Property on the filing date was not itself sufficient to support the homestead claim. (Doc. # 1-3 at 10-13.)

Steffen contends that the Bankruptcy Court made several factual errors that directly affected the Court's ultimate holding and therefore the Bankruptcy Court's Order should be reversed.  Upon review of the Bankruptcy Court's Order and the record on appeal, this Court must disagree with Steffen's

contention. The Bankruptcy Court's misstatements regarding the timing of certain background events did not form the basis of the Bankruptcy Court's holding, as Steffen submits.[2] In any event, this Court's de novo review of the Bankruptcy Court's summary judgment order will consider whether the true <u>material</u> facts of this case require reversal of that Order.

As to the Bankruptcy Court's analysis, Steffen first argues that the Bankruptcy Court misconstrued the requirement under Florida law that only a "natural person" can claim homestead exemption. (Doc. # 16 at 22.) According to Steffen, she, and not OHLP, was claiming the homestead exemption and "there is no dispute that she was a natural person entitled to claim a homestead in Florida as of the Filing Date." (<u>Id.</u>) Steffen's argument is misplaced, however, because the Florida Constitution provides that the property must be <u>owned</u> by a natural person, not that the claimant must be a natural person. Fla. Const. Art. X, § 4(a). The issue central to this dispute, then, is not whether Steffen is a natural person, but whether she owned the

---

[2] This Court does not dispute Steffen's assertions that the Bankruptcy Court's Order contained misstatements as to the timing of: (1) the Villarreal Property's conveyance to OHLP, (2) the entry of judgment against Bilzerian, and (3) Steffen's settlement with the District of Columbia Bankruptcy Court.

Property on the filing date.

Steffen next contends that the Bankruptcy Court erred when it concluded that "a stockholder cannot claim homestead in an effort to insulate the property from forced sale" and therefore Steffen did not qualify for the exemption based on her claimed position as 100% stockholder of OHC. (Doc. # 1-3 at 11 (citing In re Duque, 33 B.R. 201 (Bankr. S.D. Fla. 1983)). According to Steffen, she never asserted the exemption based on her stockholder status, because OHLP "was 100% owned by the [1995] revocable trust." (Doc. # 16 at 21.) Thus, Steffen asserts that her ownership interest arises from her status as sole beneficiary of the 1995 Trust, which was 99% limited partner of OHLP and owned all of the stock in OHLP's general partner, OHC. (Id. at 8 n. 2, 25.)

Steffen cites to several cases holding that the trustee and beneficiary of a revocable trust can claim property held in the name of the trust as exempt homestead. (Id. at 23). See e.g. In re Edwards, 356 B.R. 807, 811 (Bankr. M.D. Fla. 2006) (holding that debtor, as grantor and trustee of a trust that held legal title to the property, held a sufficient equitable interest in the property to claim it as exempt homestead where she resided on the property pre-petition with the intent to maintain it as her primary residence); In re

21

Alexander, 346 B.R. 546, 551 (Bankr. M.D. Fla. 2006) (finding that debtor had a sufficient interest in property to claim it as exempt homestead where she was principal beneficiary and trustee of the revocable trust which held title to the property and she resided in the property as her sole residence on the filing date).

The Court finds those cases distinguishable, however, because in the cited cases the property was titled in the name of the trust, where here the Property is titled in the name of a limited partnership.  Steffen has cited no case law for the proposition that property titled in the name of a partnership may be claimed as homestead and this Court's research has turned up no such cases.  The cases that have recognized a homestead exemption claim for property held in a revocable trust have done so based on the reasoning that, because the debtor could revoke the trust at any time and the property would revert to the debtor, the debtor had a beneficial ownership in the property sufficient to maintain the exemption.  Id.; In re Edwards, 356 B.R. at 810-11.  Here, revocation of the 1995 Trust would not result in Steffen's ownership of the Property.  Thus, the Court finds that Steffen's status as sole beneficiary of the 1995 Trust does not confer a legal or equitable interest in the Property to

support her homestead claim.

Steffen's argument that she possessed a beneficial interest in the Property because she resided in the Property and maintained it as her residence at the time of her petition is equally unavailing. Courts faced with the issue of entitlement to homestead exemption in the absence of title in the property have held that "in order to claim property in which the individual resides as exempt it is sufficient that: (1) the individual have a legal or equitable interest which gives the individual the legal right to use and possess the property as a residence; (2) the individual have the intention to make the property his or her homestead; and (3) the individual actually maintain the property as his or her principal residence." In re Alexander, 346 B.R. at 548. As discussed above, Steffen has not offered evidence to show that she had a legal right to use and possess the Property as of the filing date.

The Bankruptcy Court, on consideration of this issue, stated that "the record is devoid of any believable evidence to establish [Steffen's] right to occupy the residence . . . ." (Doc. # 1-3 at 12.) In her appellate brief, Steffen has asserted no evidence on this issue that was overlooked by the Bankruptcy Court, but merely reasserts the argument that legal

interest arises from her status as sole beneficiary of the 1995 Trust. (Doc. # 16 at 21-25.) Steffen also points to the affidavit she presented to the Bankruptcy Court, in which she asserted that "I claim both the equitable and beneficial ownership of 16229 Villarreal de Avila." This statement does not prove that the claimed ownership rights exist. And as previously discussed, her status under the 1995 Trust is insufficient to establish a legal interest in the Property and thus does not give rise to a legal right to occupy the property as her residence.

The record reflects no evidence of any agreement between Steffen and OHLP or any other basis for finding that she had the legal right to use and possess the property as her residence on the filing date. Thus, the Court concludes as a matter of law that Steffen did not have an equitable ownership interest in the Villarreal property at the time that she filed for bankruptcy.

In its opinion, the Bankruptcy Court considered the well established principle that homestead exemption laws are to be construed liberally in favor of the claimant, but also observed that the protection "should not be used to shield fraud or reprehensible conduct." (Doc. # 1-3 at 14.) Steffen strenuously objects to the Bankruptcy Court's related

inference that the Property was transferred to OHLP in 1997 to fraudulently shield it from creditors such as the SEC, stating that the transfer occurred almost a decade after her husband's indictment and conviction and "had absolutely nothing whatsoever to do with the disgorgement judgment entered [against him] in 1993." (Doc. # 16 at 20, 25.) This issue was not dispositive of the Bankruptcy Court's summary judgment determination, nor does the purpose behind the 1997 transfer of the Property ultimately affect this Court's decision as to the validity of Steffen's claimed exemption. Nonetheless, the Court rejects Steffen's assertion that there is no evidence to support the Bankruptcy Court's conclusion regarding the fraudulent purpose behind the Property's conveyance.

The disgorgement judgments against Steffen's husband were issued in 1993, but Bilzerian challenged the SEC's right to pursue the money damages due to his ongoing bankruptcy proceedings. While that issue was being litigated, Bilzerian and Steffen established both OHLP and the 1995 Trust, and transferred the Villarreal Property to OHLP. The SEC was not able to enforce the disgorgement judgments until the Eleventh Circuit's decision in 1998, one year after the Property was conveyed to OHLP. Thus, Steffen's contention that the transfer of the Property to OHLP in 1997 had nothing to do

with the SEC's pursuit of the disgorgement judgments is not entirely credible.

The Court finds it unnecessary to reach Steffen's final argument, that the Bankruptcy Court erred when it concluded that the 1997 conveyance to OHLP was tantamount to abandonment. The abandonment issue was merely an additional basis for denying Steffen's homestead exemption claim. Based solely on the foregoing analysis, the Court finds a sufficient basis to affirm the Bankruptcy Court's decision awarding summary judgment in the Government's favor.

**IV.  Conclusion**

The Court finds that the Government's June 13, 2002, objection to Steffen's claim of exemption for the Villarreal Property was timely filed under Bankruptcy Rule 4003(b). It is further held that Steffen did not have the necessary ownership interest in the Property to validly claim it as a homestead exemption as of her May 29, 2001, filing date.

Accordingly, it is now

**ORDERED, ADJUDGED, and DECREED:**

(1)  Terri L. Steffen's Motion for Rehearing (Doc. # 31) is **GRANTED**.

(2)  This Court's March 20, 2009, Opinion (Doc. # 30) is **VACATED**.

(3) The Bankruptcy Court's April 25, 2008, Order granting summary judgment for the Government on its objection to homestead exemption, and denying Steffen's cross-motion for summary judgment, is **AFFIRMED**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>27th</u> day of April, 2009.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record